CENTER FOR DISABILITY ACCESS
Chris Carson, Esq., SBN 280048
Phyl Grace, Esq., SBN 171771
Dennis Price, Esq., SBN 279082
Christopher A. Seabock, Esq., SBN 279640
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Scott Johnson**, | **Case No**. 5:18-cv-04283-SVK |
| Plaintiff, | |
| v. | **First Amended Complaint For Damages And Injunctive Relief For Violations Of:** American's With Disabilities Act; Unruh Civil Rights Act |
| **Soknea Hort**; **Clarendon Plaza Associates**, a California Limited Partnership; and Does 1-10, | |
| Defendants. | |

Plaintiff Scott Johnson complains of Defendant Soknea Hort; Defendant Clarendon Plaza Associates, a California Limited Partnership; and Does 1-10 ("Defendants"), and alleges as follows:

**PARTIES:**

1.    Plaintiff is a California resident with physical disabilities. Plaintiff is a level C-5 quadriplegic. He cannot walk and also has significant manual dexterity impairments. He uses a wheelchair for mobility and has a specially equipped van.

2.    Defendant Clarendon Plaza Associates owned the property located at 1072 S.

1

De Anza Blvd., San Jose, California in August 2016.

3.   Defendant Clarendon Plaza Associates owned the property located at 1072 S. De Anza Blvd., San Jose, California in May 2018.

4.   Defendant Clarendon Plaza Associates owns the property located at 1072 S. De Anza Blvd., San Jose, California currently.

5.   Defendant Soknea Hort owned the Happy Donuts located at or about 1072 S. De Anza Blvd., San Jose, California, in August 2016.

5.   Defendant Soknea Hort owned the Happy Donuts located at or about 1072 S. De Anza Blvd., San Jose, California, in May 2018.

6.   Defendant Soknea Hort owns the Happy Donuts restaurant ("Restaurant") located at or about 1072 S. De Anza Blvd., San Jose, California, currently.

7.   Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

8.   The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

9.   Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act

expressly incorporates the Americans with Disabilities Act.

10. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

11. Plaintiff went to the Restaurant in August 2016 and May 2018 (four times).

12. The Restaurant is a facility open to the public, a place of public accommodation, and a business establishment.

13. Parking spaces are another one of the facilities, privileges, and advantages offered by Defendants to patrons of the Restaurant.

14. Unfortunately, there were no compliant, accessible parking spaces marked and reserved for persons with disabilities in the parking lot of the Restaurant during Plaintiff's visits.

15. On information and belief, plaintiff alleges that the Restaurant used to have an accessible parking space in the parking lot.

16. Indeed, there are two faded International Symbol of Accessibility logos. Adjacent to the parking spaces there is faded paint that suggests that an access aisle once existed as well. There is no "NO PARKING" warning in the old access aisle, though.

17. The parking spaces designed and reserved for persons with disabilities in the parking lot of the Restaurant is a standard stall that measures 96 inches in width while the access aisle was significantly less than 96 inches in width. This parking space is not van accessible.

18. Additionally, the parking stall and access aisle were not level with each other because there was a built up curb ramp running into the access aisle.

19. This curb ramp caused slopes greater than 2.1%.

20. Currently, there is no van-accessible parking in the parking lot of the

Restaurant.

21. Currently, this curb ramp causes slopes greater than 2.1%.

22. The Defendants had no policy or plan in place to make sure that the parking space reserved for persons with disabilities remained useable prior to plaintiff's visits.

23. The Defendants have no policy or plan in place to make sure that the parking space reserved for persons with disabilities remain useable, currently.

24. Defendants have failed to maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities at the Subject Property.

25. Paths of travel are another one of the facilities, privileges, and advantages offered by Defendants to patrons of the Restaurant.

26. The path of travel from the old, faded parking spaces once reserved for persons with disabilities to the entrance of the Restaurant can be obstructed by parked vehicles because there are no wheel stops in front of the parking spaces. This allows cars to overhang into the path of travel. This can restrict passage to less than 36 inches in width.

27. Additionally, the path of travel is less than 36 inches in width when tenants of the businesses nearby leave their doors propped open.

28. Also, the path of travel to the restroom was less than 36 inches in width. It was blocked by chairs, tables and other things that are stored there. Plaintiff, as a result could not enter the restroom.

29. Transaction counters are also one of the facilities, privileges, and advantages offered by Defendants to patrons of the Restaurant.

30. The transaction counter at the Restaurant was more than 36 inches in height. In fact, the transaction counter is 42 inches high.

31. There was no lowered, 36 inch portion of the transaction counter at the Restaurant for use by persons in wheelchairs.

32. Currently, the transaction counter at the Restaurant is more than 36 inches in

height.

33. Currently, there is no lowered, 36 inch portion of the transaction counter at the Restaurant for use by persons in wheelchairs.

34. Plaintiff personally encountered these barriers.

35. Restrooms are one of the facilities, privileges, and advantages offered by Defendants to patrons of the Restaurant.

36. Meanwhile, and even though plaintiff did not personally confront the barriers, the restroom mirror is mounted on the wall so that its bottom edge is more than 40 inches above the finish floor. In fact, the restroom mirror is 43 inches high.

37. The restroom sink has a cabinet style sink that does not provide any knee clearance for wheelchair users.

38. This inaccessible facility denied the plaintiff full and equal access and caused him difficulty, discomfort, and embarrassment.

39. Plaintiff plans to return and patronize the Restaurant but is deterred from visiting until the defendants remove the barriers.

40. The defendants have failed to maintain in working and useable conditions those features required to provide ready access to persons with disabilities.

41. The barriers identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

42. For example, there are numerous paint/stripe companies that will come and stripe a van accessible parking stall and access aisle and install proper signage on rapid notice, with very modest expense, sometimes as low as $300 in full compliance with federal and state access standards.

43. Another common barrier removal project is modifying transaction counters to

First Amended Complaint                                    Case No.: 5:18-cv-04283-SVK

make a portion of the counter accessible. This is a simple construction task, well within the capabilities of any general contractor. The task can be completed easily and for a modest price.

44. Meanwhile, the mirror in the restroom could be removed or lowered so that it is accessible.

45. Plaintiff is deterred from returning and patronizing the Restaurant because of his knowledge of the barriers that exist. Plaintiff will, nonetheless, return to assess ongoing compliance with the ADA and will return to patronize the Restaurant as a customer once the barriers are removed.

46. Given the obvious and blatant nature of the barriers and violations alleged herein, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to his disability. Plaintiff will amend the complaint, to provide proper notice regarding the scope of this lawsuit, once he conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to his disability remedied. See *Doran v. 7-11*, 524 F.3d 1034 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to his disability removed regardless of whether he personally encountered them).

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) 42 U.S.C. §§ 12101, et seq.

47. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

48. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a).

Discrimination is defined, inter alia, as follows:

   a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

   b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

   c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

49. Any business that provides parking spaces must provide accessible parking spaces. 1991 Standards § 4.1.2(5); 2010 Standards § 208. To qualify as a reserved handicap parking space, the space must be properly marked and designated. Under the ADA, the method, color of marking, and length of the parking space are to be addressed by State or local laws or regulations. See 36 C.F.R., Part 1191, § 502.3.3. Under the California Building Code, to properly and effectively reserve a parking space for persons with disabilities, each parking space must be at least 216 inches in length. CBC § 11B-502.2 Under the California Building Code, to properly and effectively reserve a parking space for persons with disabilities, each such space must be identified with a reflectorized sign permanently posted adjacent to and visible from each stall or space. CBC § 1129B.4. The sign must consist of the International

Symbol of Accessibility (♿) in white on a blue background. Id. It cannot be smaller than 70 square inches and must be mounted so that there is a minimum of 80 inches from the bottom of the sign to the parking space. Id. Signs must be posted so that they cannot be obscured by a vehicle parking in the space. Id. An additional sign or additional language below the symbol of accessibility must state, "Minimum Fine $250" to ensure that the space remains available for persons with disabilities. Id. Another sign must be posted in a conspicuous place at the entrance to the parking lot or immediately adjacent to each handicap parking space, with lettering 1 inch in height, that clearly and conspicuously warn that unauthorized vehicles parking in the handicap parking spaces can be towed at the owner's expense. Id. Additionally, the surface of the handicap parking stall must have a profile view of a wheelchair occupant (♿) that is 36 inches by 36 inches. Id. And the surface of the access aisle must have a blue border. CBC § 1129B.3. The words "NO PARKING" in letters at least a foot high must be painted on the access aisle. Id.

50. Here, there was no blue border around an access aisle or parking space, there was no "NO PARKING" lettering, no striping, no blue border, no fine language, and the parking simply failed to comply.

51. Any business that provides parking spaces must provide accessible parking spaces. 1991 Standards § 4.1.2(5); 2010 Standards § 208. One in every eight of those accessible parking spaces but not less than one must be a "van" accessible parking space, *i.e.*, having an eight foot access aisle. 1991 Standards § 4.1.2(5)(b). Under the 2010 Standards, one in every six accessible parking spaces must be van accessible. 2010 Standards § 208.2.4.

52. Here, the failure to provide a van accessible parking space is a violation of the ADA.

53. Under the 1991 Standards, parking spaces and access aisles must be level with surface slopes not exceeding 1:50 (2%) in all directions. 1991 Standards § 4.6.3. Here, the access aisle is not level and has a ramp taking up part of the access

aisle. Under the 2010 Standards, access aisles shall be at the same level as the parking spaces they serve. Changes in level are not permitted. 2010 Standards 502.4. "Access aisle are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles." 2010 Standards § 502.4 Advisory. Specifically, built up curb ramps are not permitted to project into access aisles and parking spaces. *Id.* No more than a 1:48 slope is permitted. 2010 Standards § 502.4.

54. Here, the failure to provide level parking is a violation of the law.

55. Pursuant to 28 C.F.R., Part 36, Appendix D (herein after "1991 Standards"), section 4.6.3, and 36 C.F.R., Part 1191, Appendix B (herein after "2010 Standards"), section 502.7, parked vehicle overhangs shall not reduce the clear width of an accessible route.

56. In our case, defendants have not installed wheel stops in front of their parking spaces, so cars are able to encroach the path of travel that plaintiff needs to navigate his wheelchair. This is a violation of the law.

57. There must be an accessible path of travel that connects all buildings, elements and spaces on the same site. 1991 Standards § 4.3.2. The minimum clear width of an accessible route shall be 36 inches. 1991 Standards § 4.3.3.

58. Here, the failure to provide an accessible path of travel to the Restaurant and the restroom is a violation of the ADA.

59. In areas used for transactions where counters have cash registers and are provided for sales or distribution of goods or services to the public, at least one of each type shall have a portion of the counter which is at least 36 inches in length with a maximum height of 36 inches above the floor. 1991 Standards § 7.2(1). Under the 2010 Standards, where the approach to the sales or service counter is a parallel approach, such as in this case, there must be a portion of the sales counter that is no higher than 36 inches above the floor and 36 inches in width and must extend the same depth as the rest of the sales or service counter top. 2010 Standards §§ 904.4

& 904.4.1.

60.  Here, no such accessible counter has been provided in violation of the ADA.

61.  Mirrors shall be mounted with the bottom edge of the reflecting surface no higher than 40 inches above the finish floor. 1991 Standards § 4.19.6; 2010 Standards § 603.3.

62.  Here, the mirror is mounted higher than the maximum permitted and is a violation of the ADA.

63.  Sinks must provide knee clearance of at least 29 inches in height. 1991 Standards § 4.19.2 and Figure 31; 2010 Standards § 606.2 and 306.

64.  Here, no such knee clearance is provided and this is a violation of the ADA.

65.  A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

66.  Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

67.  Given its location and options, plaintiff will continue to desire to patronize the Restaurant but he has been and will continue to be discriminated against due to the lack of accessible facilities and, therefore, seeks injunctive relief to remove the barriers.

**II.  SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) Cal. Civ. Code §§ 51-53.

68.  Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.  The Unruh Civil Rights Act ("Unruh Act") guarantees, inter alia, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishment of every kind whatsoever within the

First Amended Complaint                                                Case No.: 5:18-cv-04283-SVK

jurisdiction of the State of California.  Cal. Civ. Code §51(b).

69.  The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act.  Cal. Civ. Code § 51(f).

70. Defendants' acts and omissions, as herein alleged, have violated the Unruh Act by, inter alia, denying, or aiding, or inciting the denial of, Plaintiff's rights to full and equal use of the accommodations, advantages, facilities, privileges, or services offered.

71. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. Civ. Code § 55.56(a)-(c).

72. Although the plaintiff was markedly frustrated by facing discriminatory barriers and this frustration possibly qualifies as an emotional distress injury, even manifesting itself with minor and fleeting physical symptoms, the plaintiff does not value this very modest frustration and physical personal injury greater than the amount of the statutory damages.

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000.

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code § 52.

1

Dated: May 22, 2019                    CENTER FOR DISABILITY ACCESS

2

3

                                       By: /s/ Christopher A. Seabock

4

                                       Christopher A. Seabock
5                                      Attorney for plaintiff

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

First Amended Complaint                              Case No.: 5:18-cv-04283-SVK